794 P.2d 1197

Shirley **WILBURN**, Individually, and as Personal Representative of the Estate of Charles Wilburn, Plaintiff–Appellee,

v.

Jack Keith **STEWART** and Marjorie Stewart, Defendants–Appellants.

No. 18500.

Supreme Court of New Mexico.

April 17, 1990.

Rex A. Hall, Deming, for defendants-appellants.

Cresswell & Roggow, P.A., James A. Roggow, Las Cruces, for plaintiff-appellee.

## OPINION

BACA, Justice.

Plaintiff–Appellee Wilburn brought this action for breach of contract seeking to recover $127,126.10 plus interest, costs, attorney fees, and fifteen percent interest per annum on the judgment amount, alleging that defendants-appellants Stewarts failed to pay installments due on a note and were in default. Appellee also sought a

declaration that she has a superior right, title, and interest in 547 shares of common stock of Manta Corporation. The Stewarts counterclaimed, seeking rescission of the contract based on alleged material misrepresentations made regarding the value of the assets of the business. The court excluded evidence of the alleged misrepresentations, basing its decision on the parol evidence rule. It also refused appellants' jury request to hear the claim of compensatory damages. The court ruled in favor of Mrs. Wilburn, granting her the relief requested and a deficiency judgment for any amount not covered by sale of the assets. We affirm the judgment below.

FACTS

In September 1983, the Stewarts entered into a contract to purchase Manta Corporation, a New Mexico corporation located in Deming and engaged in recreational vehicle (RV) repair, from the Wilburns. At the time, Mr. Wilburn was terminally ill; he is now deceased. Mr. Stewart was an experienced mechanic, although he apparently had no experience in RV repair specifically, and Mrs. Stewart was an attorney licensed in California, with experience in commercial transactions.

Prior to execution of the contract, the parties engaged in extensive negotiations involving discussion of the terms of payment, but not the purchase price. Mr. Wilburn had set the sale price at $180,000; this covered the stock in Manta, and the assets of the corporation including the land, building, tools, equipment, and inventory, as well as any good will and value as a going concern of the RV business. The value of the corporation was not independently appraised, although the opportunity for appraisal was available; the price represented Mr. Wilburn's own sense of what the business was worth.

The books and records of the business were made available to the Stewarts, and they reviewed them. The Stewarts, after their review, offered to buy the corporation's stock for $180,000, but rather than accepting the Wilburns' original terms, offered a smaller down payment, part of which was to be used to pay off two out-standing notes. The Wilburns accepted and agreed to carry a note for the balance due.

Prior to consummation, the Stewarts availed themselves of the opportunity to learn the business, working at the shop for six weeks. All in all, negotiations had continued for about three months.

At the closing, Mrs. Stewart represented the purchasers. There is every indication that she fully understood the details of the transaction.

Two years later, in 1985, Mrs. Stewart apparently sensed that misrepresentations had been made regarding the value of the business; nevertheless, appellants continued paying on the note. In July 1986, the Stewarts notified Mrs. Wilburn regarding the alleged misrepresentations and indicated that they would stop payment on the note. They did not offer to return the business to Mrs. Wilburn and, in fact, continued operating the business, subsequently took out a business loan for improvements, and transferred personal assets to the corporation.

The parties have raised several issues on appeal. We address the following: (1) Did the trial court correctly exclude evidence of the representations Wilburn made to the Stewarts to induce them to purchase the stock of Manta Corporation? (2) Did the Stewarts meet the conditions for rescission? (3) Did the trial court err in entering judgment in excess of the relief requested by the plaintiff?

I. *The Parol Evidence Rule Does Not Exclude Extrinsic Evidence of Misrepresentation Inducing Contract Even if the Evidence Directly Relates to the Terms of the Contract.*

■ The Stewarts argue that the parol evidence rule was improperly invoked to exclude evidence relevant to the alleged negligent misrepresentation. In *Bell v. Lammon*, 51 N.M. 113, 118, 179 P.2d 757, 760 (1947), we explained the parol evidence rule as follows: " '[A] complete, valid, written contract merges all prior and contemporaneous negotiations and agreements within its purview, and if the oral agreement is

not really collateral, but is an element of the written contract, or tends to vary or contradict the same, either in its express provisions or legal import, it is inadmissible.'" (quoting *Locke v. Murdoch*, 20 N.M. 522, 528, 151 P. 298, 300 (1915)). We further explained that the issue is really one of intent: Did the parties intend to include the points at issue within the scope of the document? Thus, parol evidence will not be allowed to vary the terms of an integrated agreement; the parties are presumed to have intended the terms of the document that they signed. In *Bell*, we also referred to an exception to the parol evidence rule: "'If a parol contemporaneous agreement be the inducing cause of the written contract * * *, and it appears the writing was executed on the faith of the parol agreement or representation, extrinsic evidence is admissible. In such cases, the real basis for its admission is to show fraud.'" *Id.* at 119, 179 P.2d at 761 (quoting *Alford v. Rowell*, 44 N.M. 392, 397, 103 P.2d 119, 122 (1940)).

It appears that the trial court found that parol evidence is admissible to show misrepresentation only if allegations of fraud are at issue and if the evidence does not relate to the express terms of the contract. We disagree and hold that parol evidence is admissible to show any misrepresentations that induced the parties to contract, whether they are fraudulent, negligent, or innocent. *Maine v. Garvin*, 76 N.M. 546, 550–51, 417 P.2d 40, 43 (1966).

■ The confusion on this point at trial had its genesis in part on a misstatement of the parol evidence rule that first appears in *Alford* and was accepted in *Bell* and the line of cases descending therefrom. *Alford* intimates that the exception to the parol evidence rule allowing extrinsic evidence for the purpose of showing misrepresentations inducing contract does not apply if the evidence relates directly to the terms of the written contract. 44 N.M. at 397, 103 P.2d at 122. This interpretation is contrary to the parol evidence rule. *See Levenson v. Mobley*, 106 N.M. 399, 403, 744 P.2d 174, 178 (1987) ("Evidence extrinsic to a written contract is properly admitted to determine the circumstances under which the parties contracted and the purpose of the contract."); 3 A. Corbin, *Corbin on Contracts* § 580 (1960) (evidence offered to show fraud in inducement admissible to show collateral factors that have legal effect, even if it directly relates to terms of agreement). Accordingly, to the extent that *Alford, Bell*, and their progeny can be interpreted for the proposition that parol evidence offered for the purpose of showing misrepresentation that also conflicts with the terms of the contract should be excluded, they are overruled. We do not, however, alter in any way the rule that parol evidence offered *for the purpose* of varying the terms of the agreement as memorialized should be excluded,[1] nor do we preclude exclusion of evidence of fraud or misrepresentation offered without proper predicate.

■ The Stewarts sought to introduce evidence that, for the purpose of inducing the contract, Mr. Wilburn represented the value of the assets of the corporation as $5,000 for inventory; $35,000 for equipment; $80,000 for the building; and $5,000 for office equipment. The contract, by its express terms, states the value of these assets as $18,000; $31,735.40; $36,446.87 (building and improvements); and $2,350 respectively. The Stewarts also sought to introduce evidence to show that Mr. Wilburn made representations, not memorialized in the document, that induced them to

---

1. It is noteworthy that many cases citing *Alford* or *Bell* have limited their scope and ignored the limitation on the introduction of evidence to prove fraud or misrepresentation. *Compare Bennett v. Finley*, 54 N.M. 139, 215 P.2d 1013 (1950) (misrepresentation regarding acreage to be conveyed can be shown by parol evidence, despite representations in contract) *and Naramore v. Mask*, 52 N.M. 336, 197 P.2d 905 (1948) (parol evidence admissible to show mutual misrepresentation despite language of document) *with McKinney v. Gannett Co.*, 660 F.Supp. 984 (D.N.M. 1981) (evidence of fraud in the inducement inadmissible because oral promises would contradict or relate to subject of written contract) *and American Inst. of Mktg. Sys. v. Keith*, 82 N.M. 699, 487 P.2d 127 (1971) (parol evidence not admissible to show inducement when it directly relates to subject of contract).

enter into the contract. This evidence does not fall within the ambit of the parol evidence rule and was improperly excluded on those grounds; however, as the remainder of this opinion demonstrates, it may well have been excludable on relevancy grounds because the proper predicate for misrepresentation could not have been shown.

## II. *Did the Stewarts Meet the Conditions for Rescission?*

█ The Stewarts based their cause of action on a theory of innocent misrepresentation. They argue that the Wilburns had a duty to disclose the true value of the assets of the corporation because the Stewarts had no knowledge of the RV business.

In *Ledbetter v. Webb*, 103 N.M. 597, 600, 711 P.2d 874, 877 (1985), we stated that the innocent misrepresentation of a material fact "will entitle the party who has *justifiably relied* thereon to rescind the contract." (Emphasis added.) Assuming, *arguendo*, that the representations excluded by the court were material, the Stewarts have not demonstrated, either by the evidence admitted by the court or through their offers of proof, that their reliance on the representations was justified. They contend that they had no experience in or familiarity with the RV business, and thus their reliance was justified. However, the evidence indicates that Mr. Stewart was an experienced mechanic; Mrs. Stewart was an attorney with experience in business transactions, and they both had the opportunity to work in the business for six weeks prior to the consummation of the sale. Mrs. Stewart testified that she was given the opportunity to inspect the books prior to the sale, and that when she found what she thought was an inconsistency, she confronted Mr. Wilburn, who told her that she should believe him—books can be made to say anything. As an experienced attorney, it would have been reasonable for her

to question the representations made. Yet, she accepted his word, did not seek an independent valuation of the business, and did not even seek to negotiate on the price. *See Miller v. Golden W. Motel,* 78 N.M. 116, 118, 428 P.2d 655, 657 (1967), and *Bell,* 51 N.M. at 120, 179 P.2d at 761 (where " 'vendee undertakes to make investigation of his own, and is given full means to ascertain all the facts, and is not prevented from making the examination as full as he likes, he cannot be heard to complain because he relied upon representations of the vendor if his purchase proves unsuccessful' " (quoting *Berrendo Irrigated Farms Co. v. Jacobs,* 23 N.M. 290, 305, 168 P. 483, 487 (1917))); *cf. Smith v. Price's Creameries,* 98 N.M. 541, 650 P.2d 825 (1982) (party to agreement who was given time and opportunity to fully examine contract, opportunity to be represented by counsel, yet failed to negotiate over terms, bound to terms of the agreement).[2]

Furthermore, the party seeking rescission must return or offer to return what has been received "as a condition precedent to maintaining a suit for rescission." *Ledbetter,* 103 N.M. at 601, 711 P.2d at 878. We do not, however, apply this rule rigidly; strict compliance is "not necessary where it 'has been rendered impossible by circumstances for which the purchaser is not responsible, or for which the vendor is responsible.' " *Robison v. Katz,* 94 N.M. 314, 319, 610 P.2d 201, 206 (Ct.App.) (quoting *Gottwald v. Weeks,* 41 N.M. 18, 21, 63 P.2d 537, 538 (1936)), *cert. denied,* 94 N.M. 675, 615 P.2d 992 (1980). In the present case, the Stewarts did not attempt or offer to return the business until after litigation commenced, several years after the alleged misrepresentations were discovered. In fact, the Stewarts indicated a contrary intent—after they stopped paying Wilburn on the note, they continued operating the business, took out

---

**2.** The Stewarts' contention that Mr. Wilburn was under a duty to disclose information is also dubious. They claim the duty arose because of their utter ignorance with regard to the RV business. Yet, this was an arms-length transaction, conducted by relatively sophisticated parties, with access to records and the opportunity

to conduct independent investigations. There are no allegations of fraudulent or willful activity, and no evidence of any type of special relationship or trust that would create a duty. *See R.A. Peck, Inc. v. Liberty Federal Sav. Bank,* 108 N.M. 84, 766 P.2d 928 (Ct.App.1988).

a business loan for improvements, transferred personal assets to the corporation, and, in response to Wilburn's demand letter, stated: "you know that I am still interested in continuing the business."

Accordingly, we find that the Stewarts' reliance on the alleged misrepresentations was not justified and that they have not met the conditions required for rescission, and we hold that they do not have any grounds to rescind the contract.

### III. *The Deficiency Judgment.*

The Stewarts contend that Wilburn did not request a deficiency judgment in her pleadings, and that therefore the district court erred by exceeding the scope of the pleadings when it awarded a deficiency judgment against the Stewarts should the sale of the corporate assets not fully satisfy the judgment. In support of this contention, the Stewarts cite *United Salt Corp. v. McKee*, 96 N.M. 65, 628 P.2d 310 (1981), and *Brantley v. Carlsbad Irrigation District*, 92 N.M. 280, 587 P.2d 427 (1978). We find these cases inapposite. *Brantley* properly states that *issues* not raised in the pleadings may not be considered by the trial court, and *United Salt* properly concludes that, in a *default judgment,* a judgment may not be rendered that exceeds the amount requested in the pleadings. *See* SCRA 1986, 1–054(D). That rule, which effectively resolves this dispute, states in relevant part: "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Accordingly, we hold that the judgment of the district court was proper.

Our resolution of these issues makes it unnecessary for us to address the Stewarts' claim for compensatory damages. The Stewarts have also raised in passing, and without citation to authority, several miscellaneous claims. Issues raised in appellate briefs that are unsupported by cited authority will not be reviewed by us on appeal. *In re Adoption of Doe*, 100 N.M. 764, 676 P.2d 1329 (1984).

In accordance with this opinion, we AFFIRM the judgment of the district court.

IT IS SO ORDERED.

RANSOM and WILSON, JJ., concur.