2005-NMCA-141

125 P.3d 647

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Raymundo RODARTE, Defendant–
Appellant.**

**No. 25,273.**

Court of Appeals of New Mexico.

Oct. 24, 2005.

Certiorari Granted, No. 29,537,
Dec. 12, 2005.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Jacqueline R. Medina, Assistant Attorney General, Albuquerque, NM, for Appellee.

Jon C. Fredlund, Klipstine & Fredlund, LLC, Hobbs, NM, for Appellant.

**OPINION**

PICKARD, Judge.

{1} In this case, we decide whether an officer may arrest an individual solely on the basis of probable cause that a minor criminal offense for which jail time is not authorized has been committed. The United States Supreme Court has decided that such arrests are permissible under the Fourth Amendment to the United States Constitution. *Atwater v. City of Lago Vista*, 532 U.S. 318, 323, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). Holding that the greater privacy protections afforded by Article II, Section 10 of the New Mexico Constitution do not permit arrests for non-jailable offenses on the basis of probable cause alone, and siding with the four dissenting justices of the United States Supreme Court, we reverse Defendant's convictions for possession of a controlled substance and tampering with evidence. We affirm his conviction for being a minor in possession of alcohol and remand for sentencing solely on that conviction.

**BACKGROUND**

{2} The undisputed facts are as follows. On August 1, 2003, Hobbs police officer An-

tonio De La Fuente stopped the vehicle in which Defendant was a passenger for running a stop sign. As the officer approached the driver's side of the car, he saw Defendant attempt to place something under his seat, and he noted a wet spot on the passenger's side floorboard. When Officer De La Fuente asked Defendant what was under the seat, Defendant put both of his hands under the seat and appeared to attempt to push something further back under the seat.

{3} Officer De La Fuente then ordered Defendant out of the vehicle and called for backup. When his backup arrived, Officer De La Fuente looked underneath the passenger's seat and found a partially empty bottle of beer. When the officer asked Defendant's age, Defendant replied that he was eighteen. Officer De La Fuente also noted that Defendant exhibited several indicia of intoxication, including blood-shot, watery eyes. Based on this information, the officer arrested Defendant on suspicion of being a minor in possession of alcohol and transported him to the Hobbs City Jail. Subsequently, Officer De La Fuente searched the backseat of the patrol car where Defendant had been sitting and found a white, powdery residue on the seat itself and a folded dollar bill containing a similar substance. The substance was later found to be cocaine.

{4} Defendant was charged with possession of a controlled substance in violation of NMSA 1978, § 30–31–23 (1990), tampering with evidence in violation of NMSA 1978, § 30–22–5 (2003) (for leaving the cocaine in the patrol car), and being a minor in possession of alcohol in violation of NMSA 1978, § 60–7B–1(C) (2004). Defendant moved to suppress all the contraband, arguing that there was no probable cause for the initial search resulting in the seizure of the beer bottle, making his arrest illegal, and that the cocaine found in the patrol car should thus be suppressed because it was a product of the arrest. In the alternative, Defendant argued that even if the initial search was permissible, the arrest was still illegal (and the cocaine should be suppressed) because the New Mexico Constitution does not permit an arrest for a minor criminal offense that cannot result in incarceration, such as being a minor

in possession of alcohol. *See* § 60–7B–1(G). The State contended that all the contraband was admissible because it was seized pursuant to an arrest based on probable cause. The trial court denied Defendant's motion and found Defendant guilty of all three offenses. The only issue Defendant raises on appeal is whether his arrest was permissible under the New Mexico Constitution.

**STANDARD OF REVIEW**

{5} Because this case presents only the pure legal question of whether the New Mexico Constitution permits arrests for minor offenses that cannot result in jail time, we conduct a de novo review of the trial court's denial of the motion to suppress. *See State v. Attaway,* 117 N.M. 141, 145, 870 P.2d 103, 107 (1994) (indicating de novo review of "threshold constitutional issues"), *modified on other grounds, State v. Lopez,* 2005–NMSC–018, 138 N.M. 9, 116 P.3d 80.

**DISCUSSION**

{6} We analyze this question in accordance with the interstitial approach outlined in *State v. Gomez,* 1997–NMSC–006, ¶¶ 21–22, 122 N.M. 777, 932 P.2d 1. We therefore begin with a discussion of *Atwater,* in which the U.S. Supreme Court decided that a warrantless arrest based only on probable cause of a seatbelt violation for which jail time was not authorized was permissible under the Fourth Amendment. 532 U.S. at 323, 354, 121 S.Ct. 1536. The Court first determined that the historical record did not support a conclusion that such arrests would have been prohibited under the original understanding of the Fourth Amendment. *Id.* at 340, 121 S.Ct. 1536. The Court then rejected the arrestee's argument that a modern understanding of the Fourth Amendment's reasonableness requirement forbids arrest when "conviction could not ultimately carry any jail time and when the government shows no compelling need for immediate detention." *Id.* at 346, 121 S.Ct. 1536.

{7} In rejecting this second argument, the Court reiterated its strong preference for easily administrable categorical rules in the Fourth Amendment area. *Id.* at 347, 121 S.Ct. 1536 (indicating that standards must be "sufficiently clear and simple to be applied with a fair prospect of surviving judicial sec-

ond-guessing months and years after an arrest or search is made"). The arrestee's proposed rule of forbidding arrest for non-jailable offenses absent a compelling need, the Court said, could prove unworkable in the field because officers might not know whether an offense was jailable, and in some cases, the jailability determination could be based on facts not immediately ascertainable. *Id.* at 348–49, 121 S.Ct. 1536 (citing statutes providing jail time only for subsequent DWI offenses and statutes basing punishment on the weight of drugs possessed). The Court's concerns were not alleviated by the arrestee's proposed exception to the rule for instances in which either arrest is necessary to enforce traffic laws or subjects might endanger others by continuing the offense despite a citation. *Id.* at 349–50, 121 S.Ct. 1536. Such an exception, the Court said, would also be unworkable because it would engender frequent questions regarding the genuineness of the risk that an individual would continue the offense, and it would potentially subject officers to expanded 42 U.S.C. § 1983 liability, leading to underenforcement of laws. *Atwater,* 532 U.S. at 350–51, 121 S.Ct. 1536. Finally, the Court reaffirmed that the probable cause standard is applicable to " 'all arrests, without the need to "balance" the interests and circumstances involved in particular situations.' " *Id.* at 354, 121 S.Ct. 1536 (quoting *Dunaway v. New York,* 442 U.S. 200, 208, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)). Such balancing, the Court said, should only be conducted when the arrestee can meet the high standard from *Whren v. United States* by showing that the arrest was " 'conducted in an extraordinary manner, unusually harmful to [his] privacy or even physical interests.' " *Atwater,* 532 U.S. at 352–53, 121 S.Ct. 1536 (alteration in original) (quoting *Whren v. United States,* 517 U.S. 806, 818, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). Thus, after *Atwater,* the federal constitution permits *any* arrest based on probable cause, no matter how disproportionate under the circumstances, so long as the arrest does not rise to the level of a violation under *Whren.*

{8} In dissent, Justice O'Connor concluded that the Fourth Amendment does not allow arrest for a non-jailable offense based solely on probable cause. *Atwater,* 532 U.S. at 363, 121 S.Ct. 1536 (O'Connor, J., dissenting). Because the historical record was unclear, Justice O'Connor found it necessary to balance " 'the degree to which [the arrest] intrudes upon an individual's privacy' " with " 'the degree to which [the arrest] is needed for the promotion of legitimate governmental interests.' " *Id.* at 361, 121 S.Ct. 1536 (quoting *Wyoming v. Houghton,* 526 U.S. 295, 300, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999)). She determined that the governmental interest in making this type of arrest was often "limited, at best." *Id.* at 365, 121 S.Ct. 1536. If a suspect is not a flight risk and arrest is not necessary to abate the proscribed behavior, then a citation may "serve the State's . . . law enforcement interests every bit as effectively as an arrest." *Id.* With regard to the individual interests at stake, Justice O'Connor noted that the intrusion on personal privacy caused by an arrest can be severe. *Id.* at 364, 121 S.Ct. 1536. Individuals may be subject to a full search including confiscation of personal items, and, if an individual is a passenger in a car, a search of the entire passenger compartment of the vehicle, including any containers found therein. *Id.* Moreover, arrestees can be detained for up to 48 hours, housed with other potentially dangerous individuals, and subjected to the consequences of the arrest becoming part of the permanent public record. *Id.* at 364–65, 121 S.Ct. 1536.

{9} Because the balancing of interests in these cases tends to weigh so heavily in favor of the individual, Justice O'Connor would have adopted a standard similar to that of *Terry v. Ohio:*

> I would require that when there is probable cause to believe that a fine-only offense has been committed, the police officer should issue a citation unless the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the additional] intrusion" of a full custodial arrest.

*Atwater,* 532 U.S. at 366, 121 S.Ct. 1536 (alteration in original) (quoting *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). This standard, Justice

O'Connor argued, would do nothing more than require officers to articulate "a legitimate reason for the decision to escalate the seizure into a full custodial arrest." *Atwater,* 532 U.S. at 366, 121 S.Ct. 1536.

{10} Justice O'Connor further explained that the majority's two main concerns—that officers would be subject to personal § 1983 liability and that underenforcement would result—would be "more than adequately resolved by the doctrine of qualified immunity." *Atwater,* 532 U.S. at 367, 121 S.Ct. 1536. She explained that because qualified immunity protects officials from liability when they make reasonable mistakes, an officer who reasonably but incorrectly concluded that an offense was jailable would not be subject to liability. *Id.*

{11} Finally, Justice O'Connor asserted that the majority's per se rule that arrests for non-jailable offenses are reasonable so long as there is probable cause creates a significant danger of officers abusing their arrest powers. *Id.* at 372, 121 S.Ct. 1536. Noting that infractions as minor as littering and failing to pay a highway toll were misdemeanors in some states, and that the consequences of arrest can be so severe, Justice O'Connor expressed grave concern about the majority's rule, which she said "gives officers unfettered discretion to choose [to arrest an individual] without articulating a single reason why such action is appropriate." *Id.* at 371–72, 121 S.Ct. 1536.

{12} Relying on *Atwater,* the State argues that probable cause that Defendant was a minor in possession of alcohol was all that was required to make an arrest. We disagree. Over the past two decades, our courts have interpreted Article II, Section 10 of the New Mexico Constitution to guarantee a "broad right" to be "free from unwarranted governmental intrusions." *State v. Gutierrez,* 116 N.M. 431, 444, 863 P.2d 1052, 1065 (1993). This interpretation has often provided significantly greater protections than those afforded under the Fourth Amendment. *See, e.g., Attaway,* 117 N.M. at 150 & n. 6, 870 P.2d at 112 & n. 6 (holding that Article II, Section 10 mandates a "knock and announce" rule for officers executing search warrants); *Gutierrez,* 116 N.M. at 447, 863

P.2d at 1068 (rejecting the "good-faith" exception to the exclusionary rule); *State v. Cordova,* 109 N.M. 211, 215–16, 784 P.2d 30, 34–35 (1989) (rejecting the federal "totality of the circumstances" approach to probable cause determinations based on tips from informants).

[2] {13} The "ultimate question" in all cases invoking Article II, Section 10 is reasonableness. *Attaway,* 117 N.M. at 149, 870 P.2d at 111. In determining reasonableness, our courts have "avoided bright-line, per se rules." *State v. Paul T.,* 1999–NMSC–037, ¶ 9, 128 N.M. 360, 993 P.2d 74. For example, the New Mexico Supreme Court held that even though a statute authorized warrantless arrests based only on probable cause for certain drug offenses, such arrests were not automatically reasonable. *See Campos v. State,* 117 N.M. 155, 158, 870 P.2d 117, 120 (1994). Rejecting a "blanket federal rule," the Court held that "each case must be reviewed in light of its own facts and circumstances." *Id.* The Court concluded that for this type of arrest to be reasonable, the arresting officer must be able to demonstrate not only probable cause, but also "some exigency ... that precluded the officer from securing a warrant." *Id.* at 159, 870 P.2d at 121. Similarly, in *Gomez,* the Court held that a "particularized showing of exigent circumstances" is required to conduct a warrantless search of an automobile. 1997–NMSC–006, ¶ 39, 122 N.M. 777, 932 P.2d 1. In imposing the exigency requirement, the Court rejected the "federal bright-line automobile exception," despite acknowledging that "it may be true that in most cases involving vehicles there will be exigent circumstances justifying a warrantless search." *Id.* ¶ 44.

{14} The greater search and seizure protections afforded by Article II, Section 10 of the New Mexico Constitution and the disfavor that our courts have shown for bright-line categorical rules lead us to adopt the rule proposed by Justice O'Connor in *Atwater.* First, we find Justice O'Connor's rule to be the one most consistent with prior New Mexico cases interpreting Article II, Section 10. In both *Campos* and *Gomez,* the Court

rejected bright-line rules that would have held certain categories of searches or seizures to be per se reasonable so long as there was probable cause. Instead, the Court in both cases adopted fact-specific reasonableness inquiries that require some showing of exigency. What we do here is similar. We hold that, under Article II, Section 10, probable cause that a non-jailable offense has been committed does not automatically make arrest reasonable, and that for such arrests to be reasonable, there must be " 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the additional] intrusion' of a full custodial arrest." *Atwater*, 532 U.S. at 366, 121 S.Ct. 1536 (O'Connor, J., dissenting) (alteration in original) (quoting *Terry*, 392 U.S. at 21, 88 S.Ct. 1868).

{15} We also find this standard to be appropriate because we agree with Justice O'Connor that when a non-jailable offense has been committed, the balancing of governmental and individual interests will generally weigh heavily in favor of the individual, such that it will often be unreasonable to make an arrest. In this case, there do not appear to have been any circumstances that made it necessary for the officer to arrest Defendant. There is no suggestion that Defendant acted in a violent or confrontational manner. He was not driving the vehicle, and he appears to have complied with all of the officer's requests. In these circumstances, a citation would likely have "serve[d] the State's . . . law enforcement interests every bit as effectively as an arrest." *See Atwater*, 532 U.S. at 365, 121 S.Ct. 1536 (O'Connor, J., dissenting). Thus, under the standard we have adopted, Defendant's arrest was unreasonable because there were no circumstances justifying the officer's choice to arrest Defendant rather than issue a citation.

{16} We also side with Justice O'Connor in believing that our interpretation of Article II, Section 10 will not create undue administrative difficulties or lead to underenforcement. We agree with Justice O'Connor's qualified immunity analysis, and we reiterate that reasonable mistakes regarding the jailability of a particular offense will not subject an officer to § 1983 liability, and thus underenforcement will not be a major concern. To the extent that such reasonable mistakes occasionally do result in evidence that is seized pursuant to arrest being later suppressed, we find that to be a necessary collateral effect of protecting the privacy interests of those who commit non-jailable misdemeanors. We believe that protecting those interests and preventing the official abuses of the misdemeanor arrest power detailed by Justice O'Connor, *Atwater*, 532 U.S. at 371–72, 121 S.Ct. 1536 justify imposing the simple requirement that officers be able to articulate why it is necessary to arrest a subject for a non-jailable offense.

{17} We also note that it appears as though the majority of state courts that have addressed the question of whether *Atwater* should be followed as a matter of state constitutional law have decided that it should not. *See, e.g., State v. Askerooth*, 681 N.W.2d 353, 361–63 (Minn.2004) (en banc); *State v. Bauer*, 2001 MT 248, ¶ 33, 307 Mont. 105, 36 P.3d 892 (2001); *State v. Bayard*, 119 Nev. 241, 71 P.3d 498, 502 (2003) (per curiam); *State v. Brown*, 2003–Ohio–3931, ¶ 7, 99 Ohio St.3d 323, 792 N.E.2d 175 (2003). We do not deem it critical that the reasoning of some of these cases may have been supported by local statutes or rules. *See, e.g., Askerooth*, 681 N.W.2d at 372–73 (Anderson, J., concurring specially). In addition, a case that considered these cases and declined to adopt their reasoning did so because, contrary to the situation in New Mexico, that jurisdiction's settled law was that the state constitutional provision was "co-extensive with the Fourth Amendment." *State v. Mondaine*, No. ED 851168, 2005 WL 2206790, at *4 (Mo.Ct.App. Sept.13, 2005) (internal quotation marks and citation omitted).

{18} Finally, we briefly address the State's two remaining arguments. First, the State relies on two New Mexico cases holding that an officer may arrest a subject if there is probable cause to believe that a misdemeanor is being committed in the officer's presence. *See State v. Hawkins*, 1999–NMCA–126, ¶ 17, 128 N.M. 245, 991 P.2d 989; *State v. Warren*, 103 N.M. 472, 475, 709 P.2d 194, 197

(Ct.App.1985). These cases do not distinguish between offenses that can result in jail time and those that cannot. Believing that to be an important distinction, we note that the cases cited by the State are not inconsistent with our holding in this case. *See Moffat v. Branch,* 2005–NMCA–103, ¶ 22, 138 N.M. 224, 118 P.3d 732 (" '[C]ases are not authority for propositions not considered.' " (quoting *Fernandez v. Farmers Ins. Co.,* 115 N.M. 622, 627, 857 P.2d 22, 27 (1993))), *cert. granted,* 2005–NMCERT–008, 138 N.M. 329, 119 P.3d 1266.

{19} Second, the State cites two New Mexico statutes that appear to allow warrantless arrests for non-jailable misdemeanors. NMSA 1978, § 3–13–2(A)(4)(d) (1988) states that an officer "shall ... apprehend any person in the act of violating the laws of the state or the ordinances of the municipality and bring him before competent authority for examination and trial." NMSA 1978, § 66–8–123(F) (1989) states, "A law enforcement officer who arrests a person without a warrant for a misdemeanor violation of the ... Liquor Control Act ... may use the uniform traffic citation, issued pursuant to procedures outlined in [NMSA 1978, § 31–1–6(B)–(E) (1987)], in lieu of taking him to jail." Section 60–7B–1(C), which is the minor in possession charge on which Defendant was arrested, is part of the Liquor Control Act. We agree that both of these statutes facially authorize the type of arrest that occurred here. But as explained in *Campos,* 117 N.M. at 157–58, 870 P.2d at 119–20, all arrests must be reasonable, and statutory authority does not automatically make an arrest reasonable. Because we have concluded that arrests for non-jailable offenses are unreasonable under Article II, Section 10 of the New Mexico Constitution in the absence of specific and articulable facts that warrant an arrest, we construe both statutes to apply to situations that meet that standard. We also note that this result is in keeping with other New Mexico statutes that demonstrate a preference for citations rather than arrest in the context of minor criminal offenses. *See* § 66–8–123(A) (stating that with certain exceptions, subjects arrested for certain misdemeanor motor vehicle offenses shall be given a citation and released from custody).

{20} In sum, we note that our holding today mandates only the following: when an individual has not committed an offense that our Legislature has deemed significant enough to warrant a loss of liberty, that individual should not be deprived of his or. her liberty through arrest unless there is a legitimate reason for the deprivation.

**CONCLUSION**

{21} We reverse Defendant's convictions for possession of a controlled substance and tampering with evidence, and we affirm his conviction for being a minor in possession of alcohol. We remand for sentencing solely on the latter conviction.

{22} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and CYNTHIA A. FRY, Judges.